**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RYAN HALLETT, | ) | |
| | ) | 05 C 50044 |
| Plaintiff, | ) | |
| | ) | Judge Frederick J. Kapala |
| v. | ) | |
| | ) | Magistrate Judge P. Michael Mahoney |
| VILLAGE OF RICHMOND, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**RICHMOND'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant, the Village of Richmond, Illinois, moves this Court for entry of a judgment as a matter of law in its favor and against plaintiff, Ryan Hallett, and dismissing this cause as against Richmond, with prejudice.

**I.    Introduction**.

To begin, plaintiff's remaining claims are outlined as:

> Count I – Excessive force pursuant to 42 U.S.C. §1983, Quilici;
> Count II – Assault and battery pursuant to Illinois law, Quilici;
> Count VI – Failure to intervene pursuant to §1983, Quilici;
> Count XII – Failure to provide medical attention §1983, Quilici;
> Count XIII – Agency claim pursuant to Illinois law, Richmond; and
> Count XIV – "Indemnification" claim, Richmond.

Thus, Richmond is not a defendant in the federal claims. Instead, Richmond is a direct defendant in the state law claims only, Counts XIII and XIV, both of which allege that Richmond should be liable for Quilici's wrongful acts and omissions because they were taken within the scope of his employment as a Richmond police officer.

As to the federal claims, an element of proof in all Counts brought pursuant to §1983 is that plaintiff establish that at the time Quilici acted, he was clothed in the authority of the state or "under color of law." See, *e.g.*, 7th Circuit Civil Pattern Jury Instruction 7.08. In a question certified to it by the U.S. Court of Appeals for the 7th Circuit, the Illinois Supreme Court has held that section 9-102 of the Illinois Tort Immunity Act requires an employing municipal entity to pay compensatory damages awards to prevailing plaintiffs bringing actions pursuant to §1983. *Yang v. City of Chicago*, 195 Ill.2d 96, 745 N.E.2d 541, 545 (2001) *citing* 745 ILCS 10/9-102. Thus, any liability on the part of Richmond flows only from a finding by the jury that Quilici has committed some wrong, either within his authority as a state actor or as a common law agent of his employer.

However, the evidence adduced at trial establishes conclusively that, either Quilici was acting reasonably within the meaning of the Fourth Amendment and there is no liability, or Quilici was acting without color of law and outside the scope of his agency. In either case, the City of Richmond is entitled to judgment as a matter of law. Furthermore, plaintiff's claims for Quilici's failure to intervene and failure to provide medical attention have not been supported by sufficient evidence, warranting judgment as a matter of law in favor of the defendant on those counts as well.

**II.     Standard for Granting a Rule 50 Motion for Judgment as a Matter of Law**

Federal Rule of Civil Procedure 50 provides that, once a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may grant a motion for judgment as a matter of law against the party. Fed.R.Civ.P. 50(a). Such a motion may be made at any time before the case is submitted to the jury. Fed.R.Civ.P. 50(b). The motion must specify the judgment sought and the facts that entitle the movant to the judgment. *Id.* The standard for granting summary

judgment mirrors the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109 (2000) (citations omitted); *accord, Murray v. Chicago Transit Authority*, 252 F.3d 880, 886-87 (7th Cir. 2001).

**III.    Color of Law and Scope of Agency.**

Three distinct versions of the incident in question have been presented to the jury. Regardless of which of the three scenarios the jury adopts, Richmond is entitled to judgment as a matter of law. More specifically, if Quilici used reasonable force in response to Hallett's knife-point attack of another officer and Jessica Thelen, Richmond is not liable, because his actions will be "reasonable" and lawful for purposes of §1983 and state law claims.

On the other hand, if Quilici simply instigated a bar fight while off duty, or if he chose to maliciously batter Hallett after Hallett was already subdued, handcuffed and unconscious, Quilici's behavior was so reckless, so personal in nature and so far removed from his authority or any law enforcement purpose that he would be acting outside the scope of his employment or without color of law.

Regardless of which of these competing versions of the truth are accepted by the jury, Richmond would not be responsible for payment of compensatory damages resulting from Quilici's behavior.

**A.     Under Color of Law and Within the Scope of Employment**

Richmond's liability is entirely derivative and rests upon Hallett being able to show that, at the time of the fight at KC's Cabin, Quilici was acting both under color of law and within the scope of his employment. *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031 (1945) ("[A]cts of

officers in the ambit of their personal pursuits are plainly excluded" from "acting under color of law" within the meaning of § 1983.); *Wolf v. Liberis*, 153 Ill.App.3d 488, 505 N.E.2d 1202, 1206 (1st Dist. 1987) ("A municipality is liable only for those acts of an off-duty policeman that fall within the scope of his employment."); 745 ILCS 10/9-101. Under Illinois law, liability will not be imposed on the municipality when the conduct of the off-duty police officer is so outrageous that it is deemed outside the scope of employment. *Wolfe v. Liberis*, 153 Ill.App.3d at 493.

Although "scope of agency" has never been precisely defined under Illinois law (*Sunseri v. Puccia,* 97 Ill.App.3d 488, 493, 422 N.E.2d 925, 930 (1st Dist.1981)), the Illinois courts have applied the following criteria to determine whether an act is within the scope of one's employment:

> (1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master.
>    * * *
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Pyne v. Witmer,* 129 Ill.2d 351, 359-60, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (Ill.1989). Criminal acts may fall within the scope of employment, but an employer is not liable for an employee's actions that "are different from the type of acts he is authorized to perform or were performed purely in his own interest." *Wright v. City of Danville,* 174 Ill.2d 391, 405, 221 Ill.Dec. 203, 675 N.E.2d 110, 118 (Ill.1996). The burden is on the plaintiff to show the contemporaneous relationship between the tortious act and the scope of employment. *Pyne*, 543 N.E.2d at 1308.

  **B.**  **Analysis**

In this case, the evidence at trial demonstrates that there are three competing versions of what

happened on the night in question. Under the first version, Officer Quilici testified that it was *Hallett* who picked the fight, waited for Quilici in the parking lot outside the bar, threatened Quilici, Pilati and Volstad, and then grabbed a woman, Jessica Thelen, who had tried to intervene, put her in a headlock and held a knife to her throat, threatening to kill her if the three men did not let him go. Quilici claimed that he identified himself as a police officer once Hallett showed a knife and told Hallett that he was under arrest. Under this version of events, the defendant officers *were* responding to a crime -- Hallett's threat of immediate grievous bodily harm or death -- to Thelen. The officers were therefore justified to use any amount of force, including deadly force, to subdue Hallett and prevent harm to themselves or anyone else. Under this version of events, Hallett was so inebriated that he was impervious to continued beating, kicking and efforts to "bring him down" and received all of his injuries in the struggle. Since deadly force can be met with deadly force as a matter of law, Quilici would not be liable. See 7th Circuit Civil Pattern Jury Instruction 7.09.

The second version of events, according to Hallett, is that Quilici provoked the fight with Hallett while they were inside the bar, then waited for him outside with his fellow off-duty officers, threatened to "kick his ass," and ultimately attacked Hallett in the parking lot, wherein Hallett attempted to use his knife in self-defense. The three, including Quilici, then proceeded to mercilessly beat Hallett. Hallett denied that Quilici ever identified himself as a police officer prior to or during the beating. According to this version of events, Quilici started this fight for purely personal purposes neither for the benefit of his employer nor in furtherance of any legitimate law enforcement purpose.

It is undisputed that Richmond has policies requiring off-duty police officers to act when they witness a crime being committed. There is, however, no assertion that, other than the fight Quilici

is alleged to have started, there was any crime being committed which the off-duty officers were responding to that night. Indeed, Hallett's version of events suggests that his use of the knife was self defense. He contends that he has no recollection of Quilici ever exercising any sort of police authority prior to or during the beating.

The third version of events essentially picks up where the first left off. That is, once Hallett was handcuffed face-down in the parking lot, Volstad and Pilati (or Volstad and Quilici if Heather Miller is believed) carried or dragged a non-resistant Hallett about 100 to 150 feet, to the front entrance of K.C.'s Cabin, threw him on the ground and then, without provocation, began beating him again.

Under this third version of events, the gratuitous violence Hallett suffered after he was subdued and no longer a threat to Thelen or anyone else served no law enforcement purpose whatsoever. This is exactly the kind of outrageous conduct that is deemed to be outside the scope of an officer's employment. *Wolfe v. Liberis*, 153 Ill.App.3d at 493. Furthermore, Quilici's unrestrained use of force that night was different in kind from that authorized by his employer, far beyond the authorized time or space limits since he was off-duty, and unrelated to any legitimate purpose to serve the master. *Pyne v. Witmer,* 129 Ill.2d 351, 359-60, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (Ill.1989).

No reasonable jury could find that there is a legally sufficient evidentiary basis upon which to find Richmond liable for Quilici's conduct. In summary: 1) Quilici responded to the threat of immediate and serious bodily harm or death to himself and others and then only used the amount of force necessary to subdue the assailant -- a proper and reasonable act within the scope of his employment; 2) Quilici instigated a beating, for purely personal reasons; or 3) he beat a subdued man

after dragging his handcuffed body 100 to 150 feet.

Regardless of the ultimate findings as to Quilici, Richmond is entitled to judgment as a matter of law. Either Quilici was acting reasonably within the meaning of the Fourth Amendment and there is no liability, or Quilici was acting without color of law and outside the scope of his agency.

## IV.     Failure to Intervene and Failure to Provide Medical Attention.

Furthermore, though pled, the failure to intervene and failure to provide medical attention claims have not been supported by sufficient evidence to allow these claims to proceed to the jury. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *see also Mantono v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008).

Applying this standard to the three competing versions of events that the jury must chose between, it is clear that, regardless of which version they adopt, Quilici can not be found liable for the failure to intervene. First, if Quilici and the other arresting officers used reasonable force in response to Hallett's knife attack and never used force beyond that which was required to subdue Hallett, then Quilici never "had reason to know" that excessive force was being used, that the arrest was unjustified, or that any other constitutional violation was taking place. Under this version of events, even deadly force was justified, the arrest itself was justified, and no other constitutional

violation took place. As such, if this version of events is adopted, no duty to intervene ever arose.

Second, if Quilici simply instigated a bar fight while off duty, which was not done under color of law or within the scope of his employment, no duty to intervene ever arose since Hallett's constitutional rights were never implicated.

Third, if Quilici and the other arresting officers used reasonable force in response to Hallett's knife attack, but then Quilici chose to maliciously batter Hallett after Hallett was already subdued, handcuffed and unconscious, then Quilici never had a realistic opportunity to intervene to prevent the harm from occurring, since it was he who was inflicting the harm. Though plaintiffs have attempted to adduce evidence that Quilici was engaged in the use of excessive force against Hallett along with Pilati, Volstad and Thelen, it is Quilici who plaintiff attempts to paint as the primary wrongdoer. Assuming that Quilici was beating plaintiff as long and as severely as argued, it is difficult for Richmond to fathom at what point Quilici became obligated to stop beating Hallett himself, and counsel the others to stop doing so as well. The testimony is that this fight took only minutes and that it was a free for all, lead predominately by Quilici. Therefore, under none of these three versions of events does a duty to intervene arise.

Regarding the failure to provide medical attention, this case should be compared with *Regalado v. City of Chicago*, 40 F.Supp.2d 1009 (N.D.Ill. 1999). In that case, the district court denied summary judgment for the City and its officers where a police officer chased a suspect into an alley, beat him and left him with friends who had witnessed the beating. *Id.* at 1014. There, the officer did not call for back-up or notify anyone that he had left the injured plaintiff in an alley. *Id.*

In this case, Pilati and Volstad called 911 three times between them, summoning aid. When Officer DeServi arrived "ten minutes later," she called paramedics. Further, Dr. Kershaw testified

that treatment of plaintiff's injuries within the first 24 hours following the trauma was critical and that plaintiff did, in fact, receive the necessary and successful treatment in a timely fashion. It is respectfully submitted that both Richmond and Quilici are entitled to judgment as a matter of law on failure to intervene and failure to provide medical attention claims.

## V.  Conclusion

Defendant, the Village of Richmond, Illinois, moves this Court for entry of a judgment as a matter of law in its favor and against plaintiff, Ryan Hallett, and dismissing this cause as against Richmond, with prejudice. Defendant further submits that Richmond and Quilici are both entitled to judgment as a matter of law on the failure to intervene and failure to provide medical attention claims.

    /s/ Stephen E. Balogh
Attorney for defendant
VILLAGE OF RICHMOND
WILLIAMSMCCARTHY LLP
120 W. State Street, Suite 400
P.O. Box 219
Rockford, IL 61105
(815) 987-8946
(815) 968-0019 (fax)
sbalogh@wilmac.com

**CERTIFICATE OF LAWYER**

The undersigned hereby certifies that on June 5, 2009, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>    Attorney Russell Ainsworth
>    Loevy & Loevy
>    312 N. May Street, Suite 100
>    Chicago, IL  60607

and I hereby certify that I have served via U.S. Mail the document to the following non-CM/ECF participant:

>    Attorney Vincent E. Solano
>    Vincent E. Solano, P.C.
>    1019 School Street
>    Lisle, IL  60532-1870

>                                                /s/ Stephen E. Balogh
>                                                Attorney for defendant,
>                                                VILLAGE OF RICHMOND
>                                                WilliamsMcCarthy LLP
>                                                120 W. State St., Suite 400
>                                                P.O. Box 219
>                                                Rockford, IL  61105-0219
>                                                Telephone:  (815) 987-8946
>                                                Facsimile:  (815) 968-0019
>                                                E-mail:  sbalogh@wilmac.com